UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SANDISK CORPORATION,<br><br>                    Plaintiff,<br>         v.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br>                    Defendant. | Case No.: C 12-06081 LHK (PSG)<br><br>**ORDER GRANTING-IN-PART MOTION TO COMPEL**<br><br>**(Re: Docket No. 44)** |

In light of the representations made by both parties during briefing, a single issue from Defendant Zurich American Insurance Company's ("Zurich") motion to compel remains before the court: does Plaintiff Sandisk Corporation ("Sandisk") owe Zurich a further response to Zurich's Interrogatory 1a? The short answer is yes, but not now.

The longer answer is as follows. Sandisk sued Zurich after Sandisk suffered a "brown-out" at two of semiconductor fabrication facilities in Yokkaichi, Japan. Although Zurich was not responsible for the brown-out (the cause was apparently a transformer failure at the power plant supplying electricity to the facilities), Zurich previously agreed to insure Sandisk for both property damage to the facilities and any business interruption. As part of its discovery into this claim,

1

Case No.: C 12-6081 PSG
ORDER

Zurich served Interrogatory 1a, which requires that Sandisk identify "each and every fact[] which refers to relates to each claim for coverage."

Sandisk objected to the breadth of the interrogatory, but further responded by identifying certain facts showing what physical loss or damage triggered its claim.[1] SanDisk's response goes on to detail the power outage and the impact on the tools and equipment within the two fabrication facilities.[2]

Specifically, SanDisk's response sets forth the following facts: (1) there was a power drop at Fabs 3 and 4 on December 8, 2010; (2) because of the power outage, 100% of the tools in Fab 3 and 80% of the tools in Fab 4 were affected (the response includes the number of tools); (3) when power was restored, all of the affected tools were not able to perform their intended functions in their then-current condition; (4) the affected tools required a variety of servicing from internal and external equipment experts in order for production to resume at Fabs 3 and 4, and the measures taken included parts replacement, physical adjustments, recalibrations, and requalification; (5) the AMHS, which controls movement of wafers, was interrupted and as a result was unable to perform its intended functions without remedial measures, and a "cold start" had to be performed; (6) in Fab 3, all wafers had to be relocated to stockers and scanned to determine the correct location, which took approximately twenty-eight hours; and (7) the repair process for the tools continued for approximately four days, causing "Suspension of the Insured's business activities."[3] The Suspension resulted from the "direct physical loss of or damage" of the tools and processes caused by the power outage.[4]

---

[1] *See* Docket No. 44-6 at 4:24-5:9.

[2] *See* Docket No. 44 at 11:3-4 ("While SanDisk's response details the power outage and its effect on tool performance…").

[3] *See, generally,* Docket No. 44-6.

[4] *Id.* at 4:24-6:7.

2
Case No.: C 12-6081 PSG
ORDER

SanDisk also referred Zurich to a specific set of documents, identified by Bates number, that summarize certain facts showing the physical loss of or damage to the tools and the AMHS.[5] SD00001803-1805, for example, is a three-page letter from SanDisk to Zurich stating the following constitutes physical loss or damage under the Policy: (1) items (tools, equipment, support systems, etc.) requiring replacement of parts, whether from external vendors or internal storage areas; (2) items requiring servicing by internal or external technicians as a result of the brownout regardless of whether or not parts have been replaced; (3) items requiring a recalibration process prior to resuming operation; and (4) items requiring requalification prior to resumption of production.[6] This letter claims that 100% of the tools in Y3 and at least 81% of the tools in Y4 fell within these categories.[7] SD00001816-1840, as well as SD00001791-1800, provides limited information regarding how long it took to bring the tools in Fabs 3 and 4 back online.[8] These documents also state the number of repair invoices for tools serviced by outside vendors.[9] SD00001771-1783 provides specific data regarding tool performance at the process level and shows the physical condition, and performance, of the tools from December 1, 2010 to December 15, 2010.[10] Additionally, SD00001619-1621, SD00001805, SD00001784-85, SD00001796, and SD00001427 provide material facts regarding physical loss of or damage to the AMHS.[11]

---

[5] *See id.* at 5:10-21 (setting forth documents by Bates numbers).

[6] *See* Docket No. 47-14.

[7] *See id.* at SD00001803. *See also* Docket No. 47-13 at SD00001798, SD00001800 (all tools affected were powered off needed requalification analysis and this constituted loss); Docket No. 47-3 at SD00001614-15 (explaining and showing process of tool requalification).

[8] *See* Docket No. 47-15 at SD00001835; Docket No. 47-13 at SD00001799.

[9] *See* Docket No. 47-15 at SD00001836-37.

[10] *See* Docket No. 47-10.

[11] *See* Docket Nos. 47-1, 47-3, 47-12, 47-13.

3
Case No.: C 12-6081 PSG
ORDER

Zurich complains that this response fails to identify the specific damage Sandisk suffered to specific property, beyond the 8,601 scrapped wafers. In particular, Zurich highlights the absence of any specific facts regarding whether and why any of the approximately 3300 machines at the facilities suffered any physical damage giving rise to the coverage claim.

The court agrees with Zurich that Sandisk must eventually show its cards, and that it has not yet done so. At the hearing, Sandisk could not tell the court even what specific machines were central to its claim. This is plainly insufficient when it is claiming over $20 million in damages.

But Zurich seeks to compel this information now through a discovery tool – the contention interrogatory – that is commonly viewed with skepticism in the federal courts when improperly timed. When fact depositions have not even begun, and trial is not scheduled until next year, a further response to Zurich's interrogatory is not yet warranted. Fed. R. Civ. P. 33(a)(2) provides in part that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." In light of this guidance, courts regularly approve contention interrogatories that are served towards the close of fact discovery, after document production and deposition are complete. But those that ask a plaintiff, or either party for that matter, to lay out its entire case, before much if any substantive discovery has taken place, ask too much. "Courts using their Rule 33(a)(2) discretion generally disfavor contention interrogatories asked before discovery is undertaken."[12]

---

[12] *In re eBay Seller Antitrust Litigation,* No. C07–1882 JF (RS), 2008 WL 5212170, at *1 (N.D. Cal. Dec.11, 2008) (citing *Tennison v. City & County of San Francisco,* 226 F.R.D. 615, 618 (N.D. Cal. 2005)). *See also In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328, 338 (N.D. Cal. 1985) (explaining that the "wisest course" was "to place a burden of justification on a party who seeks answers to these kind of questions before substantial documentary or testimonial discovery has been completed").

4

Case No.: C 12-6081 PSG
ORDER

To balance these considerations, the court GRANTS Zurich's motion, but only in part and as follows:  Sandisk shall supplement its response to Interrogatory 1a no later than 7 days after the completion of the last deposition noticed by either party.  The parties are urged to accommodate this deadline in any further scheduling of percipient witness depositions.

**IT IS SO ORDERED.**

Dated:  September 12, 2013

_____
PAUL S. GREWAL
United States Magistrate Judge